FILED & JUDGMENT ENTERED
Steven T. Salata

Oct 26 2011

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| SAMUEL VAUGHN WATKINS | ) | Case No. 10-32250 |
| TERESA CHANTEL WATKINS | ) | |
| | ) | Chapter 7 |
| Debtor | ) | |

| | | |
|---|---|---|
| LATIGO INVESTMENTS II, LLC, | ) | |
| NELSON E. BOWERS, II, and | ) | |
| JAY R. FRYE, | ) | |
| | ) | |
| Plaintiffs | ) | Adv. Proc. No. 10-3275 |
| | ) | |
| v. | ) | |
| | ) | |
| SAMUEL VAUGHN WATKINS, | ) | |
| | ) | |
| Defendant | ) | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

THIS MATTER came on for trial on October 17, 2011 upon the Complaint filed by Latigo Investments II, LLC, Nelson E. Bowers, II and Jay R. Frye ("Plaintiffs") against the Debtor asking for a determination that judgments awarded to the Plaintiffs prior to the filing on

the Debtor's Chapter 7 case are excepted from discharge under 11 U.S.C. § 523(6); and wherein Plaintiffs were represented by Jonathan P. Konvalinka and Anna S. Gorman, attorneys; and Defendant did not appear. And based upon the pleadings, evidence at trial and applicable legal authority, the Court makes the following findings of fact and conclusions of law:

## I. FINDINGS OF FACT

1.  Plaintiff Latigo Investments II, LLC ("Latigo") is a Georgia limited liability company having its principal place of business located in Chattanooga, Tennessee.

2.  Plaintiff Nelson E. Bowers, II is a citizen and resident of Hamilton County, Tennessee and is the owner of 100% of the membership interests of Latigo.

3.  Plaintiff Jay R. Frye is a citizen and resident of Iredell County, North Carolina.

4.  Plaintiffs are former owners of all of the membership interests in MB2 Motor Sports, LLC ("MB2"), a Georgia limited liability company, having its principal place of business in Mooresville, North Carolina, and engaged in the business of owning and operating NASCAR racing teams.

5.  In or about March, 2006, MB2 needed an immediate and substantial infusion of capital. Plaintiff Frye discussed MB2's funding needs with a business broker with whom MB2 had previously worked and expressed to the broker that, due to the immediacy of MB2's funding needs, MB2 was not in a position to engage in discussions with any potential investor that would impair the ability to pursue other funding sources without confirmation that the potential investor had the financial ability to satisfy MB2's funding needs.

6.  Plaintiff Bowers was in a meeting when it was communicated to Watkins that MB2's owners would not discuss any transaction with Watkins or any other potential investor

without evidence of the investor's financial capability of funding the transaction to meet MB2's needs.

7. Defendant Watkins provided a letter dated April 17, 2006 signed by Karl D. Bobo, a branch manager of Waddell and Reed, Inc., a publicly traded financial management company, which provided that Waddell and Reed was "working with RDS Diversity Capital Corporation, Inc. to obtain approval for partnership/ownership of a motor sports team in NASCAR," that the letter was "evidence of their financial ability to handle a transaction of this magnitude not to exceed $50,000,000.00" and that "RDS Diversity Capital Corp. is financially capable of purchasing ownership with the existing NASCAR team." (Exhibit 1 to the Complaint).

8. After receiving the letter from Waddell and Reed, and in reliance thereon, Plaintiffs Frye and Bowers entered into discussions with Watkins regarding Watkins' purchase of an ownership interest in MB2.

9. Watkins represented to Frye and/or Bowers that RDS Diversity Capital Corporation, Inc. was an existing corporation owned by Watkins and one or more individuals and that he was working with Waddell and Reed to obtain financing for the $30,000,000.00 transaction, but that RDS and Watkins had the financial ability to close the transaction in the event that financing with Waddell and Reed was not obtained.

10. On or about May 4, 2006, the Plaintiffs and MB2 entered into a "Reorganization Agreement" which provided, among other things, that MB2 and its members would refrain for a certain period of time, up to and including May 31, 2006, from entering into negotiations relative to the sale of their interests of MB2 or all or any significant part of MB2's assets, business or operations. (Exhibit 2 to the Complaint).

11. The representations made by Watkins were false in that RDS was never formed or organized as a business entity, neither RDS nor Watkins had the financial ability to close the $30,000,000.00 transaction and Watkins knew that Waddell and Reed had already declined to participate in the loan. Furthermore, the only possible funding available for Watkins was through World Business Capital, Corp. ("World") and Watkins was unable to meet the contingencies contained in the World commitment to provide depositor funds to purchase a certificate of deposit as collateral enhancement for a loan transaction dated April 14, 2006 as was necessary to involve World in the funding transaction requested by MB2. (Exhibit 4 to the Complaint).

12. Plaintiffs were awarded a judgment against the Defendant in the General Court of Justice, Superior Court Division, Mecklenburg County, North Carolina, in the following amounts:

    a. Latigo Investments, II, - $3,984,700.00;

    b. Nelson E. Bowers, II - $3,984,700.00; and

    c. Jay R. Frye - $1,945,000.00. (Exhibit 3 to the Complaint).

## II. CONCLUSIONS OF LAW

1. Plaintiffs' Complaint alleges that the debts owed to them by the Defendants are nondischargeable pursuant to 11 U.S.C. §523(a)(6) which provides as follows:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
>     (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

2. To support a claim for nondischargeability pursuant to the willful and malicious injury exception contained in 11 U.S.C. §523(a)(6), a plaintiff must show that the debtor acted

with substantial certainty that harm would result or a subjective motive to cause harm. *In re: Parks*, 2003 WL 22989684 (4th Cir. 2003); *In re: Kearse*, 2010 WL 2025518 (Bkrtcy. D. Md. 2010).

3. Defendant Watkins knew that RDS had not been formed as a business entity, that he and RDS could not close the transaction with the Plaintiffs without the assistance of World Business Capital Corp. and that he could not fulfill the conditions necessary to get funding from World Business Capital Corp. In addition, the Defendant knew that the Plaintiffs would be damaged by their agreement not to negotiate with other potential investors. These misrepresentations by the Defendant are sufficient to support the finding that the Debtor acted with substantial certainty that harm would result to the Plaintiffs.

4. The debt owed to the Plaintiffs as a result of their damages are nondischargeable pursuant to 11 U.S.C. §523(a)(6).

In accordance with the foregoing, it is

**ORDERED** that the judgment of Latigo Investments II, LLC against the Defendant Samuel Vaughn Watkins, in the amount of $3,984,780.00 is a non-dischargeable debt pursuant to 11 U.S.C. §523(a)(6); it is further

**ORDERED** that the judgment of Nelson E. Bowers, II against Defendant Samuel Vaughn Watkins, in the amount of $3,984,780.00 is a non-dischargeable debt pursuant to 11 U.S.C. §523(a)(6); it is further

**ORDERED** that the judgment of Jay R. Frye against Defendant Samuel Vaughn Watkins in the amount of $1,945,000.00 is non-dischargeable pursuant to 11 U.S.C. §523(a)(6).

This Order has been signed
electronically. The judge's
signature and court's seal
appear at the top of the Order.

United States Bankruptcy Court